IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



FILED
NOV 13 2008
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| VISUAL TELECOMMUNICATIONS NETWORK, INC.<br>8201 Greensboro Drive, Suite 600<br>McLean, VA 22102<br><br>Plaintiff,<br><br>v.<br><br>ARMAN DAIE<br>24350 N. Whispering Ridge Way<br>Unit #2<br>Scottsdale, AZ 85255-5729<br><br>Defendant. | Civil Action No. 1:08CV1188-LMB/IDD |

## COMPLAINT

Plaintiff Visual Telecommunications Network, Inc. ("VitelNet"), by counsel, hereby states the following in support of its Complaint against the defendant Arman Daie ("Daie"):

1. VitelNet is a Virginia corporation based in Fairfax County which specializes in the development and sales of computer software technologies which assist in home health care.

2. Daie is a resident of the State of Arizona who formerly held a position as Director of Finance and Corporate Development at VitelNet.

3. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332 and venue is appropriate pursuant to 28 U.S.C. § 1391.

### Employment of Daie

4. As a technology company, VitelNet sells its products and services to corporate

and institutional clients around the United States.

5. Daie was hired by VitelNet in 2005 to serve as a corporate financial director. In that position, he managed the company's finance, purchasing and logistics team. He was also assigned to set up the company's accounting system and had full oversight over it. He obtained specific knowledge of the company, including how it processed payments to outside parties.

6. On November 20, 2006, Daie entered an "Employment/Consulting Agreement" ("Employment Agreement") with VitelNet. A copy of the Employment Agreement is attached as Exhibit A.

7. The Employment Agreement designated Daie as a "contractor" after March 1, 2007 coordinating Vitelnet's business strategy, partnerships and capital investments under the lead of its CEO Allen Izadpanah.

8. The Employment Agreement stated that Daie would receive $5500.00 a month as a contractor until such time as the company received a buyer. It further stated that Daie would receive a commission as a "strategic advisor" for any investor that "purchases any or all of VitelNet's assets" or "invests debt or equity capital" in Vitelnet. In such case, Daie's commission would be a percentage of the amount invested, if he was involved in the underlying transaction.

9. Daie continued to serve as an employee or contractor with VitelNet until early 2008, when his wrongful actions were fully uncovered.

## Theft of Funds by Daie

10. In late 2006, Daie began an elaborate scheme to steal money from Vitelnet.

11. The scheme commenced when Daie secretly opened a post office box and

bank account in the name of "VTEL."

12. From his past review of Vitel's corporate records, Daie knew that "VTEL" – besides sharing a similar name -- was a company that had previously done business with VitelNet and, therefore, could serve as a vehicle for stealing corporate funds.

13. Over the next year, Daie wrote at least twelve (12) corporate checks from VitelNet to "VTEL" in the aggregate amount of $112,949.25. In addition, Daie received $20,919.68 from the Commonwealth of Virginia in proceeds meant for VitelNet which he deposited with "VTEL." These are preliminary figures subject to VitelNet's ongoing investigation.

14. All the checks to "VTEL" were signed personally by Daie usually by forging the name of Allen Izadpanah, a signature he had learned from his position as a corporate officer. After writing the checks, Daie then deposited them in the name of "VTEL."

15. In January 2008, Izadpanah noticed the discrepancies in certain accounts and notified Daie of his concerns, not knowing that Daie was actually stealing corporate funds. Some weeks later, after Izadpanah requested a bank investigation of certain checks, Daie called Izadpanah and confessed. He described his theft as minor and only involving a "few thousand dollars" to "cover his mother's medical bills."

16. Subsequent investigation by VitelNet has revealed that Daie's actions cost the company a far greater amount in missing funds, as well as jeopardizing its long-term financial health and corporate reputation. VitelNet's investigation into these issues is still ongoing.

17. Daie has been terminated for cause by VitelNet.

## Count One – Conversion

18. VitelNet incorporates the allegations from paragraphs 1-17 of the Complaint.

19. Daie took the legal property of VitelNet and appropriated it for his personal use without any authority. VitelNet has suffered damages as a proximate result of this unlawful conduct.

## Count Two – Breach of Fiduciary Duty

20. VitelNet incorporates the allegations from paragraphs 1-17 of the Complaint.

21. As a corporate officer, Daie had a fiduciary duty to further the best interests of VitelNet. By stealing funds which were the property of VitelNet and failing to fully disclose his actions, he breached that obligation. VitelNet has suffered damages as a proximate result of this unlawful conduct.

## Count Three -- Fraud

22. VitelNet incorporates the allegations from paragraphs 1-17 of the Complaint.

23. The actions of Daie in writing checks to a fake entity and his false statements in concealing his conduct constituted an intentional misrepresentation of a material fact which was relied upon by VitelNet to its detriment. VitelNet has suffered damages as a proximate result of this unlawful conduct.

## Count Four – Declaratory Judgment

24. VitelNet incorporates the allegations from paragraphs 1-17 of the Complaint.

25. VitelNet has been in discussions with a potential buyer regarding the purchase of company assets.

26. Daie may attempt to claim a commission from a future sale based upon the terms of the Employment Agreement. As Daie was terminated for cause due

to his malfeasance and has had no role in the company for the past nine (9) months, VitelNet seeks a ruling from the court clarifying that Daie is owed no commission and that is has no further obligation to him under the terms of the Employment Agreement.

27. There is an actual controversy between the parties for which this Court has jurisdiction to award relief.

WHEREFORE, the foregoing considered, Visual Telecommunications Network, Inc. hereby seeks an order from this Court against defendant Arman Daie with the following relief:

    a. An award of compensatory damages in the amount of $133,868.93 or such amount as might be proved at trial, plus prejudgment interest and costs;

    b. An award of punitive damages in the amount of $350,000.00;

    c. An order stating that Daie is entitled to no further compensation under the Employment Agreement and that VitelNet's obligations to him are null and void;

    d. Such other and further relief as may prove equitable.

TRIAL BY JURY IS HEREBY DEMANDED.

I hereby swear and affirm that the allegations in this Complaint are true and accurate to the best of my knowledge.

_____
Mr. Allen Izadpanay
President, Visual Telecommunications, Inc.

SUROVELL MARKLE ISAACS & LEVY PLC

_____
J. Chapman Petersen, VSB #37225
Jonathan Dailey, VSB #37442
4010 University Drive, 2nd floor
Fairfax, VA 22030
(703) 251-5400 (ph)
(703) 591-9285 (fax)
jpetersen@smillaw.com