UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
F I L E
  MAY 2 6 2009
CLERK, U.S. DISTRICT COURT
   ALEXANDRIA, VIRGINIA
```

VISUAL TELECOMMUNICATIONS )
NETWORK, INC.,              )
                           )
        Plaintiff,         )
                           )
    v.                     )     1:08-cv-01188 (IDD)
                           )
ARMAN DAIE,                )
                           )
        Defendant.         )

## M E M O R A N D U M   O P I N I O N

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 32). In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consented to have a United States Magistrate Judge conduct any and all proceedings in this civil action. Jurisdiction is proper pursuant to 28 U.S.C. § 1332, and venue is proper pursuant to 28 U.S.C. § 1391. At the May 22, 2009 hearing, Plaintiff withdrew the Motion for Summary Judgment as to the claims for breach of fiduciary duty (Count II) and declaratory judgment (Count IV). The Court took the Motion for Summary Judgment under advisement to determine liability for the claims for conversion (Count I) and fraud (Count III). A separate hearing will be held on June 5, 2009 to determine damages. For the reasons stated below, the Court will Grant in Part and Deny in Part Plaintiff's Motion for Summary Judgment.

1

## I.   Background

### A.   Procedural Background

Plaintiff Visual Telecommunications Network, Inc. ("ViTel Net"), a corporation specializing in the development and sales of home healthcare technologies, brought this action on November 13, 2008.  Defendant Arman Daie filed his Answer and Counterclaim on December 30, 2008.  On April 2, 2009, Defendant's attorney filed a Motion to Withdraw as Attorney stating that the relationship between client and counsel had become strained to the point that counsel could no longer act as an effective or efficient advocate.  On April 3, 2009, the Court granted the Motion to Withdraw.

Plaintiff served discovery requests upon Defendant to which Defendant asserted various objections and his Fifth Amendment privilege.  On April 3, 2009, the Court granted in part and denied in part Plaintiff's Motion to Compel Discovery.  In its April 3, 2009 Order, the Court ordered Defendant to specifically answer certain interrogatories, and amend his objections to the remaining interrogatories, document requests, and requests for admission to adequately demonstrate the applicability of the Fifth Amendment privilege against self-incrimination. Additionally, the Court ordered that if Defendant believed that amending his objections would further implicate his Fifth Amendment privilege, he was to produce a privilege log, in

2

accordance with Fed. R. Civ. P. 26(b)(5)(A), to the Court for an in camera review by April 10, 2009.  Plaintiff never received any further discovery responses, and the Court never received a privilege log.

In the same Order issued on April 3, 2009, the Court ordered the Defendant to retain counsel by Wednesday, April 15, 2009. Furthermore, the Defendant was instructed that if he was unable to retain counsel by April 15, 2009, he should file a notice with the Court stating that he intended to obtain counsel by a date certain or that he intended to represent himself pro se.  To date, the Defendant has failed to contact the Court or make an appearance.  Additionally, Defendant failed to appear at his deposition scheduled for April 23, 2009.

On April 17, 2009, Plaintiff was granted Leave of Court to file an amended complaint, alleging conversion, breach of fiduciary duty, fraud, and seeking a declaratory judgment. Pursuant to Fed. R. Civ. P. 15(a)(3), Defendant's answer or responsive pleading was due on May 1, 2009.[1]  As of the date of this Memorandum Opinion, Defendant has failed to answer the amended complaint or file any other responsive pleading.

---

[1] Rule 15 requires that a party file a responsive pleading to an amended complaint "within the time remaining to respond to the original pleading or within 10 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3).  Because there was no time remaining for Defendant to answer the original pleading, Defendant had 10 days after service of the amended complaint in which to file a responsive pleading.

On April 24, 2009, Plaintiff filed the present Motion.[2]  To date, Defendant has failed to file a responsive brief to Plaintiff's Motion for Summary Judgment or to contest any of the facts submitted by the Plaintiff in its Statement of Undisputed Facts. (Dkt. No. 36).  Pursuant to E.D. Va. Loc. R. 56(B), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Because Defendant failed to file a brief in response to the present Motion, the Court will assume the listing of material facts as presented by the Plaintiff are admitted.

B.   Factual Background

The undisputed facts are as follows.  ViTel Net[3] was incorporated by Allen Izadpanah on September 21, 1994.  Plaintiff states that it hired Defendant on September 1, 2004 and placed

---

[2] Pursuant to E.D. Va. Loc. R. 7(K), Plaintiff included in the present Motion a Roseboro warning.  As of May 8, 2009, the Defendant had not filed an opposition to the Motion for Summary Judgment.  As a result, the Court issued an Order giving the Defendant three business days to do so.  After issuing the May 8, 2009 Order, the Court recognized that the prior Order only gave the Defendant a total of nineteen days to respond, instead of the twenty-day period provided to pro se parties in Local Rule 7(K).  On May 13, 2009, the Court issued a second Order vacating the May 8, 2009 Order and giving the Defendant an additional five business days to file an opposition.  In total, Defendant was given twenty-eight days to file a response prior to the hearing, and he has failed to do so.

[3] Although the amended complaint only refers to ViTel Net, the Plaintiff's Statement of Undisputed Facts (Dkt. No. 36) in support of the present Motion refers to both ViTel Net and ViTelCare, Inc.  ViTelCare,Inc. was incorporated by Mr. Izadpanah on December 4, 2007, and Defendant was also in charge of its accounting department.  Because ViTelCare, Inc. is not a party to this action, the Court will not consider any of the facts relating to

4

him in charge of its accounting department.  It was in this position that Defendant gained specific knowledge of the company's accounting system and accounting department.  Only Allen Izadpanah, president of ViTel Net, and Robert W. Annand, treasurer of ViTel Net, were authorized to write checks on behalf of Plaintiff.  Defendant was never authorized to write checks on behalf of the Plaintiff.

Beginning in 2005, the Defendant created an elaborate scheme to embezzle money from the Plaintiff.  The Defendant had a personal checking account with Citibank ("Personal Account"), and Defendant was the only person authorized to withdraw money from the Personal Account.  The Defendant also organized his own corporation with a remarkably similar name to Plaintiff's, Vital Net, LLC ("Vital Net").  The Defendant is the managing member, sole member, and registered agent for Vital Net.  Defendant also set up a Vital Net checking account with Citibank ("Citibank Account"), and Defendant was the only person authorized to withdraw money from the Citibank Account.  Vital Net never had a written or verbal contract with Plaintiff, nor did it perform services for Plaintiff.  Moreover, Plaintiff never owed Vital Net any money.

---

ViTelCare, Inc. as admitted.

5

Defendant appears to have primarily used two methods to acquire money from the Plaintiff.  The first was a method whereby Defendant would print a check without authorization, forge an authorized signature, indorse it, and then deposit it into his Personal Account or the Citibank Account of Vital Net, the corporation he organized.  The second was a method of intercepting checks intended for ViTel Net, deleting any associated invoices from ViTel Net's accounting system, indorsing the checks, and then depositing them into the Citibank account. In total, Defendant acquired $481,562.41 from ViTel Net by printing or intercepting thirty-eight individual checks.[4]

## II.    Standard of Review

A motion for summary judgment is properly found where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The facts and any inferences taken from those facts must be viewed in the light most favorable to the nonmoving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987) (citing Ross v. Commc'ns Satellite Corp., 759 F.2d

---

[4] Plaintiff's Statement of Undisputed Facts (Dkt. No. 36) states that Defendant embezzled $483,380.82 from ViTel Net and ViTelCare, Inc.  As discussed above, Plaintiff referred to non-party ViTelCare, Inc. in its Statement of Undisputed Facts (Dkt. No. 36).  Plaintiff also included one check for $1,818.41 from ViTelCare, Inc. in its listing of the checks at issue, which was Check 1070, Bate Stamp 1000041.  Because ViTelCare, Inc. is not a party to this action, Plaintiff's damages amount should be $481,562.41 and not $483,380.82.  The issue of damages will be addressed at the June 5, 2009 hearing.

6

355, 364 (4th Cir. 1985)).  When the court views the facts in this manner, it must look to the affidavits or other specific facts to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.  It is "the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex, 477 U.S. at 323-24).

After the movant has met its burden, the non-moving party may not rest on its pleadings, but must come forward with specific facts showing that evidence exists to support its claims and that a triable issue remains. Celotex, 477 U.S. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . . ." Id. Federal Rule of Civil Procedure 56(e) places an obligation upon an opposing party to respond.  Specifically, Rule 56 states, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

After the expiration of 20 days from the commencement of the

7

action, or after service of a motion for summary judgment by the adverse party, a claiming party may move for summary judgment. Fed. R. Civ. P. 56(a).  The present Motion is timely because it was filed three weeks before the close of discovery, and well past 20 days from the commencement of this action.

### III.   Analysis

A.   Conversion

Section 8.3A-420 of the Virginia Code governs actions for conversion of negotiable instruments, including the checks at issue.  It applies the common law rule of conversion of personal property to negotiable instruments. Va. Code Ann. § 8.3A-420. Under Virginia law, "[a]ny distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use." Universal C.I.T. Credit Corp. v. Kaplan, 92 S.E.2d 359, 365 (Va. 1956).

At the time of the alleged conversion, ViTel Net had ownership or a right to possession of the funds in the corporate account and the checks that were made out to ViTel Net that were improperly intercepted.  Because Defendant at no time had authorization to sign checks on behalf of ViTel Net and did not have the right to intercept checks made out to ViTel Net, Defendant wrongfully asserted dominion over ViTel Net's funds.

8

Defendant printed and signed ViTel Net's checks without ViTel Net's authorization or intercepted checks intended for ViTel Net, indorsed the checks, and then deposited the checks into either his Personal Account or the Citibank Account of the corporation he organized.  When Defendant deposited the printed and intercepted checks intended for ViTel Net, he exercised dominion over the funds that was inconsistent with ViTel Net's rights and deprived ViTel Net of its right of possession and the use of those funds.  Therefore, Defendant converted the funds at issue and summary judgment is appropriate as to the Plaintiff's claim of conversion (Count I).

B.   Fraud

"The elements of actual fraud are: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Pennsylvania Life Ins. Co. v. Bumbrey, 665 F. Supp. 1190, 1200 (E.D. Va. 1987) (citing Winn v. Aleda Constr. Co., 315 S.E.2d 193, 195 (Va. 1984)).  The party alleging fraud has the burden to prove it by clear and convincing evidence. Barbour v. Barbour, 156 S.E. 365, 366 (Va. 1931).

To plead fraud, a plaintiff also must meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, Rule 9(b) states that "a party must state with

9

particularity the circumstances constituting fraud or mistake," which includes the "time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby." Fed. R. Civ. P. 9(b); Breeden v. Richmond Community College, 171 F.R.D. 189, 195 (M.D.N.C. 1995). Affirmative misrepresentations involve "a specific statement made at a specific place and time and involves specific persons." Id.

In the present case, the facts and affidavits Plaintiff has provided in support of summary judgment do not give rise to a cause of action for fraud. The evidence submitted by Plaintiff in support of its claim for fraud is such that a reasonable jury could return a verdict for the Defendant. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Plaintiff's amended complaint states that Defendant's act of writing checks to a fake entity and his false statements in concealing this conduct constituted an intentional misrepresentation of material fact, which Plaintiff detrimentally relied upon. Plaintiff, however, never alleges the contents of any material facts specifically stated by the Defendant during the course of his scheme and never shows how those material

misrepresentations were relied upon by Plaintiff.  The Plaintiff also fails to set forth with sufficient specificity the time and place of any alleged misrepresentations of material fact upon which it relied to its detriment.

Moreover, the amended complaint alleges that in January 2008, Mr. Izadpanah noticed the discrepancies in certain ViTel Net accounts and notified Defendant of those concerns.  Weeks later, after Mr. Izadpanah had requested a bank investigation, Defendant called and confessed, describing the theft as minor and only involving a few thousand dollars.  At the time these statements were made, Mr. Izadpanah had already started the investigation into the missing funds.  Therefore, Plaintiff has failed to show how it relied on these statements to its detriment.

In addition, claims for fraud are subject to a one-year statute of limitations. Pigott v. Moran, 341 S.E.2d 179, 182 (Va. 1986).  The most complicated issue when dealing with fraud is determining when the fraud accrues. Pennsylvania Life Ins. Co. v. Bumbrey, 665 F. Supp. 1190, 1202 (E.D. Va. 1987).  For that reason, it is "only when the fraudulent misrepresentation is discovered or by exercise of due diligence should have been reasonably discovered that the statute begins to run." Id. (citing Va. Code Ann. § 8.01-249(1); Lavay Corp. v. Dominion Federal Sav. & Loan Ass'n., 645 F. Supp. 612, 615 (E.D. Va.

11

1986)). Issues of when a fraud should reasonably have been discovered, as with most issues of reasonableness, are typically best left to the jury. Id. (citing Schmidt v. McKay, 555 F.2d 30, 37 (2d Cir. 1977)).

As noted above, Mr. Izadpanah noticed the discrepancies in certain accounts in January of 2008. While this date is less than one year prior to ViTel Net bringing the present action, the fraud committed by Defendant began in 2005 and continued for three years. Whether or not Defendant's scheme could have been reasonably discovered earlier by Mr. Izadpanah by exercise of due diligence is a question for the jury.

Based on the facts and affidavits presented by the Plaintiff and viewed in the light most favorable to the Defendant, Plaintiff has not established all of the required elements of fraud. Additionally, there remains an issue as to whether the Plaintiff timely filed the action as to fraud. Therefore, summary judgment must be denied as to the Plaintiff's claim of fraud (Count III).

## IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. No. 32) is GRANTED IN PART AND DENIED IN PART. The Plaintiff's Motion for Summary Judgment as to Count I of the amended complaint (conversion) is GRANTED. The Plaintiff's Motion as to

Count III of the amended complaint (fraud) is DENIED.

The Clerk is directed to forward copies of this Order to counsel of record and Defendant Daie at his address of record.

ENTERED this 26th day of May, 2009.

_____ /s/_____
Ivan D. Davis
United States Magistrate Judge

Alexandria, Virginia

13